UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LAWRENCE A. LYNN,

        Plaintiff,

v.

        Civil Action 2:21-cv-5004
        Judge Michael H. Watson
        Magistrate Judge Chelsey M. Vascura

BECTON DICKINSON AND COMPANY,

        Defendant.

**OPINION AND ORDER**

Plaintiff, Lawrence A. Lynn, an Ohio citizen, brings this action against Defendant, Becton Dickinson and Company, a New Jersey citizen, alleging that Defendant breached a license agreement when it failed to pay Plaintiff royalty payments related to blunt cannula penetration medical valves. This matter is before the Court on Defendant's Motion to Transfer Venue (ECF No. 16) and Defendant's Motion for Referral to Mediation and for Temporary Stay of Proceedings and Discovery During Mediation (ECF No. 17). For the following reasons, both of Defendant's Motions are **DENIED**.

        **I.    BACKGROUND**

Plaintiff is an Ohio resident who has invented various forms of medical technology, including "methods and processes for Blunt Cannula Penetration Medical Valves." (Am. Compl. ¶ 9, ECF No. 23.) In 1998, Plaintiff entered into various agreements with Defendant, culminating in the Patent License Agreement for the Blunt Cannula Penetration Medical Valves, effective November 13, 1998 (the "Patent License Agreement"). (*Id.* at ¶ 17.) Under the Patent License

Agreement, Plaintiff granted an exclusive license to Defendant to exercise rights under specified patents and other technology owned by him related to the Blunt Cannula Penetration Medical Valves ("BCPMVs") in exchange for royalty payments. (*Id.* at ¶ 18.) The parties amended the Patent License Agreement in 2005 and 2008. (*Id.* at ¶¶ 27–28.)

Defendant's part in negotiating and executing these agreements took place via its wholly-owned subsidiary, Becton Dickinson Infusion Therapy Systems, Inc. ("BD Infusion"), which is headquartered in Sandy, Utah. (Harding Decl. ¶¶ 4, 8, ECF No. 16-1.) On two occasions during 1998–1999, Plaintiff traveled to Sandy, Utah to meet with BD Infusion representatives in connection with the Patent License Agreement's negotiation, execution, and performance. (*Id.* at ¶ 8.) Likewise, BD Infusion executives traveled to Ohio to meet with Plaintiff in connection with the Patent License Agreement's negotiation and execution. (Lynn Decl. ¶ 7.) During the time since the Patent License Agreement was executed, manufacturing, testing, and marketing of the BCPMVs took place primarily at BD Infusion's facilities in Utah. (Harding Decl. ¶ 8, ECF No. 16-1.) BD Infusion (and/or Defendant in Franklin Lakes, New Jersey, or San Antonio, Texas) issued royalty payments under the Patent License Agreement in Utah, and Plaintiff received those royalty payments in Ohio. (*Id.*; Lynn Decl. ¶ 9.) The parties have had many telephonic and email communications between Plaintiff in Ohio and Defendant in Utah or New Jersey. (Lynn Decl. ¶ 8.)

Plaintiff alleges that Defendant violated the Patent License Agreement and its Amendments by failing to make royalty payments to him beginning in August 2019. (Am. Compl. ¶ 42, ECF No. 23.) Plaintiff commenced this action on October 8, 2021, advancing claims for breach of contract and declaratory relief. (Compl., ECF No. 1; Am. Compl. ¶¶ 41–49, ECF No. 23.) On December 27, 2021, Defendant filed the present Motion to Transfer Venue,

2

contending that the parties' convenience favored transferring this action under 28 U.S.C. § 1404(a) to the District of Utah, where Defendant's employees, non-party witnesses, and records are located. (ECF No. 16.) Defendant simultaneously filed a Motion for Referral to Mediation and for Temporary Stay of Proceedings and Discovery During Mediation, contending that the case would benefit from court-ordered mediation and that the parties' and the court's resources would be conserved by staying discovery pending mediation. (ECF No. 17.) Plaintiff filed a Memorandum in Opposition to each Motion on February 7, 2022. (ECF Nos. 27–28.) Defendant filed Reply briefs on March 1, 2022. (ECF Nos. 35–36.)

## II.  DEFENDANT'S MOTION TO TRANSFER VENUE

**A.  Standards Governing Transfer of Venue**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought." The moving party bears the burden of demonstrating that a change of venue is warranted. *Centerville ALF, Inc. v. Balanced Care Corp.,* 197 F.Supp.2d 1039, 1049 (S.D. Ohio 2002). District courts have broad discretion in ruling on a motion to transfer under § 1404. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). This provision codifies the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is another federal Court. *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 61 (2013). A district court considering a § 1404(a) motion must evaluate both the parties' convenience and various public-interest considerations. *Id.* at 62. The moving party must demonstrate that transfer would allow for the litigation to proceed in a *more* convenient forum, not merely "a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964).

The analysis involves three steps. *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 493 (6th Cir. 2016). First, the court determines the amount of deference to be accorded the

3

plaintiff's choice of forum. *Id.* "The Court must give foremost consideration to the plaintiff's choice of forum, and the balance must weigh 'strongly in favor of a transfer' before the Court should grant a Section 1404(a) motion." *W. & S. Life Ins. Co. v. Morgan Stanley Mortg. Cap., Inc.*, No. 1:11-CV-00576, 2011 WL 6372845, at *4 (S.D. Ohio Dec. 20, 2011) (citing *Nicol v. Koscinski,* 188 F.2d 537 (6th Cir. 1951); *Lewis v. ACB Bus. Servs.,* 135 F.3d 389, 413 (6th Cir. 1998), *Artisan Dev. v. Mountain States Dev. Corp.,* 402 F. Supp. 1312 (S.D. Ohio 1975)); *see also Atl. Marine*, 571 U.S. at 63 ("Because plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), we have termed their selection the 'plaintiff's venue privilege.'") (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 635 (1964)). Generally, the plaintiff's choice of his home forum is accorded substantial deference because it presumptively convenient. *Hefferan*, 828 F.3d at 493.

Step two requires the defendant to establish the availability of an adequate alternative forum. Ordinarily, this requirement will be satisfied when the defendant is amenable to process in the other jurisdiction. *Solari v. Goodyear Tire & Rubber Co.*, 654 F. App'x 763, 766 (6th Cir. 2016) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981). "In rare cases an alternative forum may provide a remedy so 'clearly inadequate or unsatisfactory that it is no remedy at all'—for example 'where the alternative forum does not permit litigation of the subject-matter of the dispute.'" *Id.* (quoting *Piper Aircraft*, 454 U.S. at 254 & n.22 (1981)). "Law that is simply less favorable to the plaintiff in the alternative forum is not so extraordinary as to render that forum inadequate." *Hefferan*, 828 F.3d at 495.

Step three requires the court to consider the private and public interests implicated by dismissing or retaining the case in the plaintiff's chosen forum. *Hefferan*, 828 F.3d at 493. The relevant private and public factors include access to witnesses and evidence; availability of

4

compulsory process; cost of obtaining witnesses, willing or otherwise; administration difficulties for the trial court; local interest in the litigation; and the law applicable to the controversy. *Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).

**B.      Analysis**

After undertaking *Hefferan*'s three-step analysis, the Court finds that on balance, the relevant factors favor maintaining the litigation in the Southern District of Ohio.

At step one, the undersigned finds that Plaintiff's selection of his home forum should be afforded substantial deference, as it is presumed to be convenient. *See Hefferan*, 828 F.3d at 493; *W. & S. Life Ins. Co.*, 2011 WL 6372845, at *4. Defendant's repeated assertions that the case has "little to no connection to Ohio apart from Dr. Lynn himself" are unpersuasive, as Dr. Lynn himself is a critical part of this case. (*E.g.*, Def.'s Reply 17 n. 8, ECF No. 35.) Indeed, as one of the parties to the contract at issue, Dr. Lynn in part negotiated and executed the Patent License Agreement in Ohio and received royalty payments under the Agreement in Ohio. Moreover, BD Infusion executives traveled to Ohio to meet with Plaintiff in connection with the Patent License Agreement's negotiation and execution. Accordingly, the undersigned does not find this is the type of case in which the plaintiff's choice of forum is entitled to little weight because "the cause of action has little connection with the forum." *Bartell v. LTE Club Operations Co.*, No. 2:14-CV-00401, 2015 WL 770341, at *6-7 (S.D. Ohio Feb. 23, 2015), *report and recommendation adopted*, 2015 WL 1730415 (S.D. Ohio, Apr. 14, 2015).

At step two, the parties do not dispute that the District of Utah would be an adequate alternative forum, in that subject-matter jurisdiction and venue would be proper in, and Defendant would be amenable to process issuing from, that court. *See Sky Tech. Partners, LLC v. Midwest Research Inst.*, 125 F. Supp. 2d 286, 291 (S.D. Ohio 2000).

5

Step three requires the Court to balance a number of factors related to convenience and justice. In resolving part two of this § 1404(a) analysis, a district court evaluates various private-interest factors (which have been recited in a number of ways), including: (1) the convenience of the parties and witnesses, (2) the accessibility of the evidence, (3) the availability of compulsory process, (4) the cost of obtaining willing witnesses, (5) the practical problems of trying the case most expeditiously and inexpensively, and (6) the interests of justice. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). Courts may also consider public-interest factors such as (1) court congestion, (2) local interest in deciding the controversy at home, and (3) in diversity cases, the interest of conducting the trial in the forum of the governing law. *Youngblood v. Life Ins. Co. of N. Am.*, No. 3:16-CV-34-TBR, 2016 WL 1466559, at *1 (W.D. Ky. 2016) (citing *Atl. Marine*, 571 U.S. at 62–63). Ultimately, the transfer statute provides district courts with broad discretion to determine the appropriateness of transfer on an individualized, case-by-case basis. *Reese*, 574 F.3d at 320; *Inter-National Found. Corp. v. Disney 1999 Ltd. P'ship*, No. 2:09-cv-983, 2010 WL 1438759, at *2 (S.D. Ohio Apr. 9, 2010).

      **1.**      **Private Interest Factors**

Defendant makes a number of arguments as to why the parties' private interests favor transfer to the District of Utah. Namely, Defendant contends that the bulk of the documents, witnesses, and other evidence are located in Utah. However, as Plaintiff points out, "[s]ince documents can normally be easily copied and, when they must be reviewed before copying that review is usually conducted by counsel, the location of documents is frequently only a minor consideration." *Bartell*, 2015 WL 770341, at *7. Indeed, if the parties exchange documents electronically (even those originally existing only in hard copy), as is standard litigation practice in the year 2022, the documents' original location is irrelevant. Electronic production of documents requires the same amount of time and resources regardless of whether the documents

6

originate or are received in Ohio or Utah. *See*, *e.g.*, *Fruitstone v. Spartan Race Inc.*, 464 F. Supp. 3d 1268, 1283 (S.D. Fla. 2020) (finding location of documents to be "virtually irrelevant" when the defendant failed to identify any particular prejudice that may arise from having to produce documents from outside the forum).

The location of witnesses similarly carries little weight given the widespread availability of video conferencing. Indeed,

> "[I]n this age of robust video conferencing technology, one would expect relative travel costs to be a non-issue, regardless of the precise number of witnesses present in either locale." This statement rings even more true in 2022, in the age of Covid-19, when persons and institutions throughout the world, including this Court, have amassed experience in conducting business via ZOOM and similar video conferencing technologies.

*Ganpat v. Eastern Pacific Shipping, PTE. Ltd.*, No. 18-13556, 2022 WL 219052, *10 (E.D. La., Jan. 25, 2022) (quoting *Salebuild, Inc. v. Flexisales, Inc.*, 633 F. App'x 641, 643 (9th Cir. 2015)). The Eastern District of Kentucky has reached this same result:

> AECOM argues that because the employees and representatives of WVDOT "will be crucial witnesses" in this case, and they are located in the Southern District of West Virginia, that is a more convenient jurisdiction. . . .
>
> While this may be true, the pandemic has been instrumental in highlighting the benefits of modern technology. To the extent there is additional expense or inconvenience to any of the witnesses, this may be alleviated though [sic] video depositions, remote testimony, or other technological means.

*Bizzack Constr., LLC v. TRC Eng'rs, Inc.*, No. CV 5:20-84-KKC, 2021 WL 1230482, at *3 (E.D. Ky. Mar. 31, 2021).

Further, the location of witnesses who remain employed by Defendant is not properly considered, as employers are presumed to be able to compel their appearance in any appropriate forum. *See Sanhua Int'l, Inc. v. Riggle*, No. 2:17-cv-368, 2019 WL 2088431, at *6 (S.D. Ohio, May 13, 2019) (recognizing that the inconvenience of a party's employees "is entitled to little or no weight" because an employer has the ability to compel its employees' "appearance for

deposition or trial"); *James v. Norfolk & Western Ry.*, 430 F. Supp. 1317, 1319–20 (S.D. Ohio 1976) ("With respect to the defendant's argument for transfer, we note that the factual witnesses are employees of the defendant and presumably will appear if the defendant so orders them.")

Moreover, Defendant's concern about its inability to compel non-employee witnesses to appear in Ohio is wholly speculative; Defendant has offered no facts to support its conjecture that such witnesses might refuse to appear. *See Kendle v. Whig Enter., LLC*, No. 2:15-CV-1295, 2016 WL 354876, at *8 (S.D. Ohio Jan. 29, 2016) (denying transfer in part because "neither defendant Rutland nor WHIG has offered any evidence that any of the third party witnesses are unable or unwilling to provide testimony at a trial in this district"); *Safety Today, Inc. v. Roy*, No. 2:12-CV-510, 2012 WL 2374984, at *5 (S.D. Ohio June 22, 2012) (denying transfer in part because "it is not certain the Defendants' witnesses would move to quash instead of agreeing to testify," and even if such witnesses refused to appear, "the depositions of these witnesses can be introduced at trial" under Fed. R. Civ. P. 32(a)(4)(B)).

In sum, all of these factors weigh equally in favor of the litigation proceeding in Ohio or Utah, such that they neither favor nor disfavor transfer.

### 2. Public Interest Factors

Defendant also contends that the public interest factors favor transfer to the District of Utah. But as with the private interest factors, the undersigned finds that these factors are at most neutral, or in some cases disfavor transfer. First, as to court congestion, although the District of Utah sees fewer new cases each year than does the Southern District of Ohio, Plaintiff points out that federal court data shows that this Court typically resolves civil cases faster than the District of Utah. *See* United States District Court—National Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2021.pdf (reflecting, for the twelve-month period ending June 30, 2021, a median time from filing to

8

disposition of 10.2 months for the Southern District of Ohio and 12.6 months for the District of Utah, and the percentage of civil cases over three years old at 3.6% for the Southern District of Ohio and 13.3% for the District of Utah). Moreover, Defendant's reliance on the number of case filings and pending cases per judge is misplaced:

> The disparity in caseload that Defendant cites arises from this Court's handling of one of the largest multidistrict litigation cases in the country: *In Re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation*, 2:18-md-2846. Thus, the statistics Defendant cites do little to support its position.

*Olin-Marquez v. Arrow Senior Living Mgmt., LLC*, No. 2:21-CV-996, 2022 WL 479781, at *14 (S.D. Ohio Feb. 17, 2022). This factor is therefore at most neutral, and may, in fact, disfavor transfer.

Second, Ohio's interest in deciding the controversy is just as strong as Utah's. Although Defendant makes much of its many employees who negotiated and performed Defendant's obligations under the Patent License Agreement at Utah, Defendant ignores that the Patent License Agreement was also negotiated and performed by Plaintiff in Ohio. Therefore, although a substantial part of the events giving rise to Plaintiff's claims occurred in Utah, it is equally true that "a substantial part of the events giving rise to the Plaintiff['s] claims occurred in this judicial district in Ohio." *Egrsco, LLC v. Evans Garment Restoration, LLC*, No. 2:09-CV-358, 2009 WL 3259423, at *7 (S.D. Ohio Oct. 8, 2009). This factor is therefore neutral.

Finally, in this diversity case, the undersigned must consider the interest of conducting the trial in the governing law's forum. The Patent License Agreement contains a choice-of-law provision naming Ohio law as governing the Agreement's construction, interpretation, and application. (Patent License Agreement § 11, ECF No. 15-2.) Defendant does not dispute that the present contract dispute is governed by Ohio law. This fact disfavors transfer. *See Iron Workers Dist. Council of S. Ohio & Vicinity Annuity Tr. v. Larry N. Carlin, Inc.*, No. 3:17-CV-00165,

9

2017 WL 5054740, at *6 (S.D. Ohio Oct. 17, 2017) (finding that parties' agreement that Ohio law would apply to their dispute "favors keeping venue in this District"), *report and recommendation adopted*, 2017 WL 5005728 (S.D. Ohio Nov. 1, 2017). And although the District of Utah is no doubt fully capable of applying Ohio law to a contract dispute, it is not *more* capable than this Court, which routinely applies Ohio law. *Cf. Midwest Motor Supply Co. v. Kimball*, 761 F. Supp. 1316, 1319 (S.D. Ohio 1991) ("Thus, although this Court is more familiar with Ohio law than the Northern District of Georgia, it does not appear that Ohio contract law is so unique that this fact alone should strongly militate against transfer.") Further, even if, as Defendant suggests, resolving the contract dispute will also require interpretation of federal patent law, the Southern District of Ohio and the District of Utah are equally positioned to apply federal law. *See Tyco Healthcare Grp., L.P. v. Medrad, Inc.*, No. 1:04-cv-773, 2005 WL 8162654, at *7 (S.D. Ohio Mar. 17, 2005) ("Patent law being federal, the same law will be applied in both courts."). Therefore, this factor is at most neutral between the two districts.

In sum, venue is equally proper in the Southern District of Ohio and the District of Utah, and the public and private interest factors are primarily neutral. "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen*, 376 U.S. at 645–46. Although Utah may be an equally convenient forum in which to litigate this action, Defendant has not shown that it would be a *more* convenient forum. Moreover, in light of the substantial deference afforded to Plaintiff's selection of his home forum, and Defendant's burden to demonstrate that the balance of the remaining factors weighs strongly in favor of transfer to overcome that selection, the undersigned finds that transfer would not be appropriate. *See Hefferan*, 828 F.3d at 493; *W. & S. Life Ins. Co.*, 2011 WL 6372845, at *4.

### III.    DEFENDANT'S MOTION FOR REFERRAL TO MEDIATION AND TO STAY PROCEEDINGS

Defendant further moves for an order (1) referring this action to mediation, (2) directing the parties to mediate this lawsuit through a private mediator to be chosen and funded by the parties, and (3) temporarily staying all proceedings and discovery during the mediation's pendency, or, in the alternative, staying all discovery except for discovery that is narrowly tailored to facilitate the mediation. (ECF No. 17.) Although Defendant is optimistic that mediation may be productive at this time, Plaintiff disagrees and contends that Defendant failed to provide a settlement offer that Plaintiff deemed necessary to move forward with mediation. (Pl.'s Mem. in Opp'n 2, ECF No. 28.) In light of the parties' differing views regarding the case's current potential to be resolved at mediation, the Court declines to order the parties to mediate. Further, as Defendant's request for a stay of proceedings was predicated on an order referring this action to mediation, a stay is unwarranted.

### IV.    DISPOSITION

For the foregoing reasons, Defendant's Motion to Transfer Venue (ECF No. 16) and Defendant's Motion for Referral to Mediation and for Temporary Stay of Proceedings and Discovery During Mediation (ECF No. 17) are **DENIED**.

    **IT IS SO ORDERED.**

    /s/ *Chelsey M. Vascura*
    CHELSEY M. VASCURA
    UNITED STATES MAGISTRATE JUDGE