UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Lawrence A. Lynn,

    Plaintiff,

v.

Becton, Dickinson and Company,

    Defendant.

Case No. 2:21-cv-5004

Judge Michael H. Watson

Magistrate Judge Vascura

## OPINION AND ORDER

Becton, Dickinson and Company ("Defendant") moved to dismiss Lawrence A. Lynn's ("Plaintiff") Second Amended Complaint. ECF Nos. 48 & 50.[1] Upon review of the Rule 12 briefing and attachments, the Court notified the parties that it intended to convert the motion to dismiss into a motion for summary judgment and allowed the parties additional time to submit evidentiary support and supplemental briefs. ECF No. 64. For the following reasons, summary judgment is **GRANTED** to Defendant.

### I.    FACTS

Plaintiff is a medical doctor and inventor of medical devices. Pl's Decl. ¶¶ 1–2, 8–10, ECF No. 70-1. Relevant to this case, Plaintiff invented a series of medical devices known as Blunt Cannula Penetration Medical Valves (the

---

[1] With the Court's permission, Defendant filed a public version of the motion, which includes some redactions, and a sealed, un-redacted version. See ECF Nos. 48, 49, & 50.

"Valves"). *Id.* ¶ 10. Plaintiff owns several patents related to the Valves. *See, e.g.*, Contract 1, ECF No. 34-2. Defendant is a global medical technology company that develops, manufactures, and sells a variety of medical supplies and devices. Sec. Am. Compl. ¶ 8, ECF No. 44.

In 1998, the parties entered into a Patent License Agreement (the "Contract") which provided Defendant with an exclusive right and license to some of Plaintiff's Valve-related patents. *See generally*, Contract, ECF No. 34-2. In exchange, Defendant agreed, *inter alia*, to pay Plaintiff royalties for any patented improvement made within a specified time. *Id.*

In 2005, the parties amended the Contract (the "First Amendment"). First Amendment, ECF No. 50-3. Relevant here, one of the changes required Defendant to annually adjust certain royalty payments by an amount equal to 50% of the change in the Consumer Price Index during the prior year. *Id.* Three years later, the parties again amended the Contract (the "Second Amendment"). Second Amendment, ECF No. 50-4. In pertinent part, the Second Amendment changed the provision covering the expiration of Defendant's obligations to make royalty payments, as explained further below. *Id.* at 1.

Based on its reading of the Contract as amended by the Second Amendment, Defendant stopped making royalty payments in August 2019. Pl.'s Decl. ¶ 29, ECF No. 70-1. Plaintiff believes that Defendant's royalty obligations extend beyond 2019, and he therefore brought this action for breach of contract. *See generally*, Sec. Am. Compl., ECF No. 44.

## II. PRELIMINARY MATTERS

Plaintiff has raised some concerns about the procedural posture of the case and seems to imply that it would be unfair to treat the pending motion as one for summary judgment. See, e.g., Suppl. Brief 5, ECF No. 70; Mot., ECF No. 76. For example, Plaintiff asserts that it is improper to consider certain issues before the close of discovery and has requested the opportunity to file a supplemental declaration. E.g., Mot. 76. The proposed supplemental declaration was attached to the motion for leave to file the same. Id.

As an initial matter, the motions for leave to file a sur-reply and supplemental declaration, ECF Nos. 56 & 76, are **GRANTED**. The Court usually does not permit additional briefing; however, given the unusual posture of this case, the Court will consider all of the parties' submissions.[2]

Next, to whatever extent Plaintiff believes this case is still at the pleadings stage, he is mistaken. In the Court's prior Opinion and Order—issued almost four months before the supplemental briefing was ultimately due—the Court clearly informed the parties that it intended to treat Defendant's motion to dismiss as a motion for summary judgment. ECF No. 64. Moreover, as the Court previously explained, it gave such notice specifically out of concerns of fairness to Plaintiff. Id.

---

[2] Defendant is correct that it did not have the opportunity to file a supplemental response to the supplemental declaration. However, as the Court grants summary judgment to Defendant, the Court cannot see how Defendant was prejudiced by the lack of this opportunity.

Regarding discovery, the Court initially gave the parties sixty days to submit any evidence and supplemental briefing. *Id.* Subsequently, the Court granted every motion for an extension of that deadline and gave no indication that it would have denied further extensions. *See* ECF Nos. 66 & 68. Thus, if Plaintiff needed additional time to complete discovery, he need only have requested the same. Plaintiff cannot, however, fail to request such an extension and later suggest that the Court should not treat the pending motions as true motions for summary judgment because the parties have not completed discovery.[3] In addition, in this breach of contract case, minimal discovery is necessary and, of the discovery that could be helpful, much of it is in Plaintiff's control. *See* Part III.B., *infra*.

Thus, the Court gave both parties clear notice of its intent to treat the motion to dismiss as a motion for summary judgment, initially gave the parties sixty days to respond, and then granted additional extensions totaling sixty days. By so doing, the Court has adhered to the requirements of Federal Rule of Civil Procedure 12(d). *See* Fed. R. Civ. P. 12(d) (" All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion [before a court converts a motion to dismiss into one for summary judgment]."); *see also Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009) (instructing that, before a district court may convert a motion to dismiss

---

[3] To the extent Plaintiff is attempting to move under Federal Rule of Civil Procedure 56(d), he has entirely failed to comply with the affidavit requirement of the same.

into one for summary judgment, "the district court must afford the party against whom sua sponte summary judgment is to be entered ten-days['] notice and an adequate opportunity to respond" (internal quotation marks and citations omitted)). Moreover, all of Plaintiff's claims were discussed in the original motions to dismiss and related briefing. Thus, any argument from Plaintiff that he lacked notice that Defendant was challenging one or more of those claims is without merit.

To summarize:

- The Court considers, *inter alia*, the following briefs and related attachments in this Opinion and Order: ECF Nos. 48, 50, 52, 55, 56, 57, 60, 70, 71, 72, 75, 76, and 78.
- Pursuant to the Court's September 23, 2022 Opinion and Order, Defendant's motion to dismiss is converted to a motion for summary judgment and will be considered under the traditional Rule 56 standard.
- Consistent with the Rule 56 standard, the Court will consider and require evidentiary support, as appropriate.

### III.   STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The Court must grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine dispute of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court "disregards all evidence favorable to the moving party" that the jury would not be "required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (internal quotation marks and citations omitted). Summary judgment "will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (citation omitted); *see also Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

The Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). The Court may rely on the parties to call attention to the specific portions of the record that

demonstrate a genuine issue of material fact. *Wells Fargo Bank, N.A. v. LaSalle Bank N.A.*, 643 F. Supp. 2d 1014, 1022 (S.D. Ohio 2009).

## IV. ANALYSIS

Plaintiff asserts three claims: (1) a breach-of-contract claim related to the expiration of Defendant's royalty payment obligation; (2) a breach-of-contract claim related to a price index adjustment to the royalty payments; and (3) a request for declaratory judgment. The Court considers each, in turn.

### A. Expiration of Royalty Obligation

Plaintiff alleges that Defendant breached the Contract when it stopped making royalty payments in November 2019. To establish a claim for breach of contract under Ohio law, a plaintiff must prove: "(1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; (4) damage or loss to the plaintiff." *New Lansing Gardens Hous. Ltd. P'ship v. Columbus Metro. Hous. Auth.*, 46 F.4th 514, 520 (6th Cir. 2022) (cleaned up; citing Ohio law).

Here, the issue is whether Defendant had a contractual duty to pay Plaintiff royalties beyond 2019. Under the Contract, as amended, Defendant's obligations to pay Plaintiff royalties expired on August 12, 2019, with three exceptions:

1. Royalties due for any patent that "issues from" U.S. patent application no. 20070225635 (the "'635 Application").

2. Royalties due under Article III, paragraph 2(b).

    3.    Royalties for products which fall within Article I, paragraph 9(3), until the expiration of any patent that issues from the '635 Application ("Exception Three").

Contract 3–5, ECF No. 34-2; Second Amend. 1, ECF No. 50-4. Only Exception Three is relevant here. Whether Exception Three applies depends on whether any patents "issued from" the '635 Application.[4]

The parties disagree about the meaning of "issues from." Defendant argues that Exception Three covers only patents that issued directly from the '635 Application and excludes any patents that issued from related applications, like continuation-in-part applications. Plaintiff argues that "issues from" means not only those patents that issued directly from the '635 Application, but also those patents that issued from continuation-part-applications or other related applications. Under Plaintiff's reading, Defendant's royalty obligations would continue beyond 2019 because at least one patent issues from a continuation-in-part application of the '635 Application.[5]

---

[4] The Contract language for Exception Three provides as follows:

> [P]rovided no royalties are due by reason of Article I paragraph 9(3) until the expiration of any patent that *issues from* U.S. patent application no. 20070225635, [Defendant's obligations to pay royalties will expire on August 12, 2019].

Second Amend. 1, ECF No. 50-4 (emphasis added).

[5] The parties also dispute whether a specific patent satisfies the other requirements of Exception Three. *See, e.g.*, Resp. 17–18, ECF No. 52; Reply 18–20, ECF No. 55. Because the Court concludes that no patent "issued from" the '635 Application, it need not address these arguments.

The meaning of "issues from" has not been litigated often. Indeed, the case discussed by the parties, *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1340 (Fed. Cir. 2008), appears to be the only case in which a court discussed the meaning of "issues from." *See* discussion of *Cooper*, *infra*. That said, courts uniformly refer to a patent as "issuing from" whichever application the patent *directly* issues from. For example, if a patent issues directly from a continuation-in-part application, courts routinely refer to that patent as "issuing from" the continuation-in-part application, not the parent application. *See, e.g., WCM Indus., Inc. v. IPS Corp.*, No. 2:13-CV-02019-JPM, 2013 WL 3349182, at *4 (W.D. Tenn. July 2, 2013) (noting that a patent "issued from" the "patent application that was a continuation-in-part [application] of" another patent application); *VirnetX Inc. v. Apple Inc.*, 792 F. App'x 796, 799 (Fed. Cir. 2019) ("The '211 patent issued from a continuation [application] of the '504 patent's application."); *Bravo Co. USA, Inc. v. Badger Ordnance LLC*, No. 214CV00387VRCJGWF, 2016 WL 4699691, at *2 (D. Nev. Sept. 7, 2016) ("The '546 Patent issued from a continuation [application] of the application from which the '600 Patent issued."); *Umbanet, Inc. v. Epsilon Data Mgmt., LLC*, No. 2:16-CV-00682-JRG, 2017 WL 3508771, at *1 (E.D. Tex. Aug. 16, 2017), *aff'd*, 745 F. App'x 168 (Fed. Cir. 2018) ("The '374 Patent issued from a continuation-in-part [application] of the '730 Patent's application."). In agreement with this uniform usage in patent law, as used in the Contract, "issues from" unambiguously means only those patents that *directly* issue from an application; it does not

cover patents that may issue from continuation-in-part or other related applications.

True, the Federal Circuit once concluded that "issues from" is ambiguous. See Cooper, 536 F.3d at 1340. The Cooper Court first explained that the Federal Circuit "most commonly refers to a patent as issuing from the final application in the chain—not from a parent application." Id. (citing cases). The Cooper Court goes on to observe that "this usage is not universal, and this court has sometimes referred to multiple patents as issuing from a single parent." Id. (citing Glaxo, Inc. v. Novopharm, Ltd., 110 F.3d 1562, 1564 (Fed. Cir.1997)).

At first blush, this would seem to lend strong support for Plaintiff's position, or at least for a conclusion that "issues from" is ambiguous. A close analysis, however, belies that conclusion. In support of its observation that the Federal Circuit "sometimes referred to multiple patents as issuing from a single parent," the Cooper Court cites to only one case: Glaxo, Inc. v. Novopharm, Ltd., 110 F.3d 1562, 1564 (Fed.Cir.1997). The Cooper Court quotes Glaxo as stating that "the '431 and '133 patents issued from this [parent] application." Cooper, 536 F.3d at 1340 (quoting Glaxo; alteration in original).

Respectfully, the Court disagrees with the Cooper Court's reading of Glaxo. The Glaxo court first described a parent application for a certain chemical. Glaxo, 110 F.3d at 1564. The Glaxo court then outlined a related, but new, form of the chemical. Id. Glaxo's researchers "filed a patent application for the new form," and two patents "issued from this application." Id. From the

context, it is apparent that the "this application" from which the two patents issued was the *second* application, not the parent application, as the *Cooper* Court believed. *Id.*; *Cooper*, 536 F.3d at 1340. Because this Court disagrees with the Cooper Court's reading of *Glaxo*, the *Cooper* Court's conclusion that "issued from" is ambiguous is unpersuasive.

Finally, the Court has been unable to find any cases that firmly support Plaintiff's reading of "issues from." Even the case on which Plaintiff relies, *Progressive Games, Inc. v. Amusements Extra, Inc.*, 83 F. Supp. 2d 1180 (D. Colo. 1999), discusses the three at-issue patents as issuing from three separate applications. *Id.* at 1181. Accordingly, because "issues from" has a specialized meaning in patent law, "issues from" unambiguously refers to only those patents that issue directly from an application.

Because the Court finds the meaning of "issues from" unambiguous as used in the Contract, it does not consider any extrinsic evidence, including common usage or understanding at the time of contracting, the negotiations leading up to the Second Amendment, or the subjective understanding of the parties at the time of contracting. The caselaw cited above, of course, is not extrinsic evidence. *Whitehouse Condo. Grp., LLC v. Cincinnati Ins. Co.*, 569 F. App'x 413, 420, n. 2 (6th Cir. 2014) ("[C]aselaw does not amount to extrinsic evidence. . . .").

Applied here, no patent "issued from" the '635 Application. Plaintiff himself admits as much. *See* Mot. Ex. D, ECF No. 50-5. Instead, there are only patents

that issued from continuation-in-part applications, for example U.S. Patent 8,480,968. Pl.'s Decl. ¶ 40, ECF No. 70-1; Mot. Ex. F, ECF No. 50-7. Because that patent issued from the continuation-in-part application, and *not* directly from the '635 Application, it does not trigger Exception Three. Because none of the exceptions apply here, Defendant's royalty obligations expired on August 12, 2019.[6]

Plaintiff's remaining arguments to the contrary are unpersuasive. First, Plaintiff argues that, under Exception Three, if the Court concludes that no patent "issued from" the '635 application, Defendant's royalty obligations expired with the expiration of the last-to-expire patents covering a relevant product. *See* Resp. 8, ECF No. 52. According to Plaintiff, under this reading, Defendant's obligation to make royalty payments continued through December 2021. *Id.*

Plaintiff is correct that, under the original contract, Defendant's royalty obligations expired with the expiration of the last-to-expire patents covering a relevant product. Original Contract 5, ECF No. 34-2. That provision is contained in Article III, paragraph 5 of the original contract. *Id.* Article III, paragraph 5 was

---

[6] Because the Court has concluded that "issues from" means only those patents that directly issued from the '635 Application, the Court does not need to address the arguments related to continuation versus continuation-in-part versus child applications. That is, under the Court's reading, patents that issued from any continuation, continuation-in-part, or child application do not "issue from" the '653 Application.

Similarly, the Court also need not address Plaintiff's allegations that Defendant breached the duty of good faith and fair dealing. All such allegations related to events after August 2019 that allegedly reduced Defendant's royalty obligations. Because Defendant's obligations to make royalty payments ended in August 2019, any actions Defendant took after that date did not have a bearing on those obligations.

specifically amended in the Second Amendment, however. Second Amend., ECF No. 50-4. Thus, the expiration provision upon which Plaintiff relies—the one in the original Contract—is no longer part of the Contract.

Further, Plaintiff's reading conflicts with the plain language of the now-operative Article III, paragraph 5. That paragraph states that, unless one of the exceptions applies, Defendant "shall have a completely paid-up, royalty free right and license to subsequently make, have made, use, sell, offer for sale and import Royalty Bearing Product and shall have no further obligation to Dr. Lynn under the Licensed Patents or Technical Information as of August 12, 2019." Second Amend. 1, ECF No. 50-4. Accordingly, Plaintiff's argument is unpersuasive.

Next, in response to Defendant's characterization of Exception Three as a condition precedent, Plaintiff argues that the Court should not imply a condition precedent or a forfeiture on the Contract. *See, e.g.*, Supp. Mot. 4, ECF No. 70. Plaintiff asserts that both such conclusions are disfavored in Contract law. *Id.*

As an initial matter, the Court is unconvinced that its reading of Exception Three creates either a condition precedent or a forfeiture. As discussed above, the Contract clearly creates an end-date for Defendant's royalty obligations and enumerates three specific exceptions to that end-date. The mere fact that the factual circumstances here do not meet one of those exceptions does not create an implied forfeiture or condition precedent; instead, the parties simply revert to the default end-date.

Even assuming that this reversion-to-the-default is a forfeiture or condition precedent, Plaintiff's arguments on this topic are unavailing. True, contract law does disfavor post-contractual conditions precedent and forfeitures. *Hartline v. Statoil USA Onshore Properties, Inc.*, No. 2:16-CV-315, 2017 WL 1014377, at *4 (S.D. Ohio Mar. 14, 2017) ("Under Ohio contract law, forfeitures are abhorred."); *4218868 Canada, Inc., dba Pivotal Holdings, Ltd. v. Kwasny*, 654 F. App'x 727, 731 (6th Cir. 2016) ("Under Ohio law, conditions precedent are not favored by the law . . . ." (cleaned up)). The general rule disfavoring conditions precedents and forfeitures does not, however, supersede the plain language of the contract. *Hartline*, 2017 WL 1014377, at *4–5 (explaining that forfeitures cannot be implied but may be expressed in the language of the contract); *4218868 Canada*, 654 F. App'x at 731 (instructing that courts should not construe a contract to contain a condition precedent "unless the intent of the agreement is plainly to the contrary" (citing cases)). Here, for the reasons explained above, the so-called conditions precedent or forfeitures, if they exist at all, come from the plain language of the contract. As such, Plaintiff's arguments are unpersuasive.

Plaintiff also argues that the inclusion of the word "any" in Exception Three "necessarily" means that the parties anticipated more than one patent issuing from the '635 Application, which, in turn, means that the parties anticipated Exception Three would cover patents indirectly issuing from the '635 Application. *See, e.g.*, Supp. Mot. 11, ECF No. 70.

The Court disagrees. Plaintiff's own quoted definition of "any" encompasses "any" meaning "one." *Id.* (quoting Merriam Webster Dictionary). Thus, even by Plaintiff's own source, "any" does not "necessarily" include more than one. Second, considering that, at the time of contracting, the parties did not know the number of patents that would issue from the '635 Application, or even know whether such a patent would ever issue, the parties had to use an indeterminate word like "any" to describe such a potential patent. Accordingly, this argument is without merit.

In sum, no patent "issued from" the '635 Application, none of the exceptions in the royalty provision apply, and Defendant's obligation to pay royalties expired on August 12, 2019.

**B.     Royalty Payment Adjustment**

In the Second Amended Complaint, Plaintiff alleges that Defendant also breached the Contract by failing to properly make price adjustments to the royalty payments. Sec. Am. Compl. ¶ 44, ECF No. 44. Specifically, Plaintiff alleges that the Contract, as amended, required Defendant to adjust the royalty payments by an amount equal to 50% of a change in the consumer price index. *Id.*; First Amendment, ECF No. 50-3.

At summary judgment, the moving party bears the burden of showing "that there is an absence of evidence to support the nonmoving party's case.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party may do so by merely "pointing out" the lack of evidentiary support. *Id.*; *see also Scadden v.*

*Werner*, 677 F. App'x 996, 1000 (6th Cir. 2017) ("The moving party may meet its burden [at summary judgment] by highlighting an absence of facts or evidence to support a plaintiff's claims." (citing *Celotex*, 477 U.S. at 323)). That is, a movant can "challenge the opposing party to 'put up or shut up' on a critical issue." *Id.* (internal quotation marks and citations omitted). The nonmovant cannot defeat summary judgment with "conclusory evidence." *Reedy v. West*, 988 F.3d 907, 914 (6th Cir. 2021). "The purpose of summary judgment is to determine whether a material fact dispute exists for the jury to resolve, not to replace conclusory allegations of the complaint or answer with conclusory allegations in an affidavit, verified complaint, or deposition." *Id.* (cleaned up).

Here, Defendant argues that Plaintiff lacks adequate evidentiary support for the price-adjustment claim. The Court agrees: Plaintiff offers no meaningful evidentiary support for this claim. Instead, his supporting evidence—his own supplemental affidavit—offers only the conclusory statement that Defendant "has not made payments to me based on the promised [price index adjustments] to the royalties it paid me under Exhibit A to the First Amendment." Supp. Decl. ¶ 4, ECF No 76-1. Plaintiff does not identify any changes to the Consumer Price Index occurred for the relevant years nor does he provide the specific amounts of the payments he received during the relevant time. Likewise, he does not calculate what the royalty adjustment should have been or how that adjustment compares with the payment he received. In short, Plaintiff's supplemental

declaration provides only conclusory facts, which is insufficient to defeat summary judgment.[7]

## C. Declaratory Judgment

Plaintiff also seeks a declaration from the Court explaining the parties' rights and obligations under the Contract. Second Amend. Compl. ¶¶ 46–49, ECF No. 44. Specifically, Plaintiff sought a declaration that (1) Defendant breached the Contract for the reasons alleged in the Second Amended Complaint; and (2) Defendant's obligation to make royalty payments continued until December 7, 2021. *Id.* For the reasons explained herein, Plaintiff's allegations and arguments in support of his requested declaration are unavailing.

## V. CONCLUSION

For these reasons, Defendant's motion for summary judgment is **GRANTED**. The Clerk is directed to enter judgment for Defendant and close the case.

**IT IS SO ORDERED.**

*[signature]*

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[7] Plaintiff argues that it is unfair to grant summary judgment on this claim due to a lack of evidence because of the procedural posture of this case. First, without "a Rule 56(d) affidavit or a motion that gives the district court a chance to rule on the need for additional discovery"—which Plaintiff has not filed—a court "will not normally address whether there was adequate time for discovery." *Scadden v. Werner*, 677 F. App'x 996, 999–1000 (6th Cir. 2017) (cleaned up). Additionally, much of the information that could have supported this claim is almost certainly in Plaintiff's control or publicly*(e.g.*, the amount of each payment he received from Defendant or the consumer price index), yet Plaintiff did not present the same. Thus, Plaintiff's argument is unpersuasive.